LOTTIE LICHTENSTEIN, Respondent, *v.* THE MAYOR, ALDER-MEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

1. MUNICIPAL CORPORATIONS — DUTY OF KEEPING WALKS FREE FROM SNOW.  The duty of a city to keep its walks free from ice and snow does not require it also to clear that part of the roadway that is so near the walks that a traveler may step upon it to avoid a pool of water.

2. ACCUMULATION IN ROADWAY OF SNOW FROM CROSSWALK.  A city is . not bound to remove from the roadway or bed of the street ridges of snow accumulated from clearing a crosswalk.

3. EXTENT OF DUTY IN REMOVING SNOW FROM CROSSWALK — ABSENCE OF NEGLIGENCE.  When a crosswalk has been cleared of snow to its full width and beyond, the law does not impose upon the municipal authori-ties the duty of foreseeing that water may accumulate on the walk, and that a traveler, in avoiding it, may be injured by stepping upon a ridge of snow cast from the walk into the roadway; and the omission to so remove the snow as to render such a contingency impossible does not con-stitute negligence.

4. INJURY TO TRAVELER IN STEPPING UPON RIDGE OF SNOW OUTSIDE OF CROSSWALK.  If a crosswalk in a city street has been cleared to its full width and beyond, so as to make a safe and convenient crossing but for the accumulation of water caused by the melting of snow and ice, the municipality is not liable for an injury sustained by a traveler in stepping upon a ridge of snow and ice in the roadway, formed from clear-ing the walk, in avoiding a pool of water on the walk, caused by the melt-ing of the snow and ice.

*Lichtenstein* v. *The Mayor*, 29 App. Div 542, reversed.

(Argued May 10, 1899; decided June 13, 1899.)

. APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 6, 1898, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover damages for a personal injury alleged to have been caused by the negligence of the defendant.

The facts, so far as material, are stated in the opinions.

*John Whalen, Corporation Counsel* (*Theodore Connoly* and *William B. Crowell* of counsel), for appellant. Absence of contributory negligence on the part of the plaintiff has not been shown. (*Whalen* v. *C. G. L. Co.*, 151 N. Y. 74; *Wilson* v. *City of Charlestown*, 8 Allen, 137; *Horton* v. *Ipswich*, 12 Cush. 491.) No negligence was shown on the part of the defendant. (*Muller* v. *City of Newburgh*, 32 Hun, 24; *Kaveny* v. *City of Troy*, 108 N. Y. 571; *Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Battersby* v. *Mayor, etc.*, 7 Daly, 16; *Betts* v. *Vil. of Gloversville*, 8 N. Y. Supp. 795; *Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Staley* v. *Mayor, etc.*, 37 App. Div. 598.) The city had performed its duty in regard to the crossing where the accident occurred. (*Wilson* v. *Mayor, etc.*, 1 Den. 595; *Mills* v. *City of Brooklyn*, 32 N. Y. 489.)

*George Hahn* for respondent. Appellant's negligence was clearly shown. (*Ring* v. *City of Cohoes*, 77 N. Y. 83; *Hawley* v. *City of Gloversville*, 4 App. Div. 343; *Thompson* v. *Vil. of Saratoga Springs*, 22 App. Div. 186; *Stone* v. *City of Poughkeepsie*, 15 App. Div. 582; *Jones* v. *City of Troy*, 4 N. Y. Supp. 792; *Ney* v. *City of Troy*, 3 N. Y. Supp. 679; *Conklin* v. *City of Elmira*, 11 App. Div. 402; *Wells* v. *City of Brooklyn*, 9 App. Div. 61; *Farley* v. *Mayor, etc.*, 152 N. Y. 222.) The plaintiff showed her own freedom from contributory negligence. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 529; *Greany* v. *L. I. R. R. Co.*, 101 N. Y.

419; *Todd* v. *City of Troy*, 61 N. Y. 506; *Bullock* v. *Mayor, etc.*, 99 N. Y. 654; *Schafer* v. *Mayor, etc.*, 154 N. Y. 466; *Chisholm* v. *State*, 141 N. Y. 246; *McPherson* v. *City of Buffalo*, 13 App. Div. 502; *Niven* v. *City of Rochester*, 76 N. Y. 619.)

O'BRIEN, J.    The plaintiff recovered a verdict of $2,000 for a personal injury sustained while crossing Seventy-ninth street, in the city of New York, on the 8th day of March, 1893.    There is no dispute about the main facts upon which the action is based.    It appears that the plaintiff, while crossing from one side of the street to the other, upon a crosswalk, slipped and fell, sustaining what is called a Pott's fracture of the leg.    It is not claimed that the crosswalk itself was out of order, but it appears that considerable snow had fallen during the winter, and some six or seven inches within three or four days prior to the accident.    The snow had been shoveled from the crosswalk and thrown on each side of it into the bed of the street, and having been packed, formed what are called ridges, or banks, on each side of the crossing. These ridges had become hard by thawing and freezing, and were from one to three feet high.    The day of the accident was mild, and the ice and snow melted rapidly, and the water from the melting snow and ice collected on the crosswalk between the ridges, forming a pool deep enough to wet the feet when walking on the crossing.    In this condition of the street the plaintiff was crossing upon the crosswalk, and coming to the water attempted to avoid it by stepping on to one of the ridges when, in some way, she slipped, and, turning the ankle, sustained the fracture already described.

This case does not involve the liability of the city for allowing ice or snow to accumulate on a sidewalk, or a crosswalk, but for allowing it to accumulate in the bed of the street. The crosswalk over which the plaintiff was passing had been shoveled and swept, so that the snow was completely removed, but in doing that ridges had been created on each side.    The accumulation of snow and ice in the bed of the street left the

crossing lower than the roadway on each side, and the water from the melting snow and ice naturally accumulated there. If the passenger followed the crossing the water was a disagreeable, though not a dangerous obstacle. If she left the crossing and took the bed of the street the melting snow or ice confronted her. In keeping the sidewalks and crosswalks free from snow or ice the city authorities must either throw it into the bed of the street or cart it away. In this case they did not draw it away, but threw it into the street on each side of the walk, and the roadway having in this manner been raised above the crosswalk, the result was the accumulation of water which the plaintiff sought to avoid by stepping on the ridges in the roadway.

The question presented by this appeal is whether the city can be made liable for the result of such an accident. It seems to me that it cannot, unless we are prepared to hold that it is the duty of the city to use reasonable care and diligence in removing the snow and ice, not only from the walks, but from the roadbed as well. If it is bound to cart away all the snow that may fall within the limits of the street, within a reasonable time, and not allow any ice or snow to accumulate either on the walks or on the roadway, then it may be that there was a question in this case for the jury ; but if no such duty is imposed upon the city authorities, it is difficult to state any principle or reason upon which this judgment can be upheld.

It is scarcely necessary to say that in the varying and uncertain winter climate of this state such a measure of diligence on the part of the city authorities would be unreasonable, since it would be impossible to comply with it. The accumulation of ice and snow in the streets of great cities is, no doubt, a very great inconvenience, but to hold the city liable for the result of every accident arising from such a condition would carry the rule of responsibility beyond all reasonable limits. The city would practically become an insurer of the individual against all injuries and mishaps in such times. Thus far the liability of a city for accidents caused by slipping on snow or

ice has been limited to cases where the obstacle was on the walks generally used by foot passengers. In order to sustain this judgment we must make a very great and important advance, and hold that the defendant was not only bound to keep the walks clear of snow and ice, but the roadway also, or at least that part of it that is so near the walks that a passenger may step upon it when seeking to avoid a pool of water. The contention of the learned counsel for the plaintiff, while not expressed exactly in these words, leads logically to this conclusion. The only negligence that can be imputed to the city is that it failed to remove from the bed of the street the ridges of snow upon which the plaintiff stepped when injured. There is no such duty imposed by the law, in my opinion, upon the authorities of cities. Such a rule of responsibility would be so unreasonable and oppressive that it need not be considered in discussing questions of liability for accidents of this character. The storms of winter in this climate produce conditions on the streets of great cities favorable to the occurrence of such accidents. The individual cannot be insured against all dangers from the elements in the city, any more than in the country, and when an injury of this kind is caused by an accumulation of ice or snow in the bed of the street, it is simply an accident, for the results of which no one is responsible.

The liability of the city for damages in a case of this character may always be tested by the inquiry whether the accident could fairly or reasonably have been anticipated by the authorities and guarded against. Could any reasonably prudent or careful man have foreseen or anticipated what happened to the plaintiff while crossing the street in question? If not, then the city is not, and ought not to be, liable. Assuming as we must that the city is not chargeable with negligence for omitting to cart away the snow from the roadway, there is no proof of any other defect, and hence there is nothing left for the judgment to rest upon, unless it be claimed that the particular place where it was deposited, with reference to the crosswalk, was improper. The walk to the full width and

beyond was cleared, so as to make a safe and convenient crossing, but for the accumulation of water caused by the melting of snow and ice on a mild day. It cannot be affirmed with any reason or justice that the authorities were at fault in not anticipating what happened to the plaintiff, and guarding against it. It cannot be said that in the exercise of a reasonable diligence they should have foreseen that water would accumulate on the walk, and that to avoid it a traveler in the street was liable to be injured by stepping upon one of the ridges made by the snow when removed from the walk. This would be exacting from the authorities of cities a measure of vigilance and foresight quite impossible, and out of all proportion to any danger to be apprehended from such a cause. It may be safely asserted that the law does not impose any such impossible standard of duty upon municipalities. (*Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Kaveny* v. *City of Troy*, 108 N. Y. 571; *Taylor* v. *City of Yonkers*, 105 N. Y. 209; *Muller* v. *City of Newburgh*, 32 Hun, 24; affirmed, 105 N. Y. 668; *Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Lane* v. *Town of Hancock*, 142 N. Y. 510.)

The proof in the case did not warrant a finding of negligence on the part of the defendant, and the motion to dismiss the complaint should have been granted.

The judgment should be reversed and a new trial granted, costs to abide the event.

Martin, J. (dissenting). I cannot concur in the conclusion that the evidence in this case was insufficient to justify the submission to the jury of the questions of the defendant's negligence and the plaintiff's freedom from contributory negligence, or that it was insufficient to uphold the verdict.

The plaintiff attempted to cross Seventy-ninth street in the city of New York at Second avenue where there was a public and much-used crossing. When, with a child in her arms, she reached it she found it covered with water to the depth of one foot, and, consequently, that it was practically impassable.

Upon each side of the crosswalk there were ridges or embankments of ice, mud, stones and snow, which were from one to three feet in height. The plaintiff endeavored to cross, as others did, by walking upon one of the ridges by the side of the crosswalk. While doing so she slipped, fell and was seriously injured. This accumulation of water was occasioned by the omission of the defendant to remove obstructions which existed and remained in the gutters of the street, so that the water, instead of being taken off in the usual manner ran on to the crosswalk and was there impounded by the embankments which were upon either side. This condition had existed at that place for at least a month prior to the accident.

It is said that if the plaintiff had followed the crosswalk the water was a disagreeable, although not a dangerous, obstacle. It seems to me it was both. With what propriety can it be said that ladies who are required to cross the streets in the city of New York are bound to wade through water a foot in depth, which has accumulated and been retained upon the crosswalks by the omission of the city to keep its gutters in a proper condition of usefulness, and if, under those circumstances, they pursue the identical course followed by others crossing there and are injured, they cannot recover because the water was only a disagreeable obstacle and not a dangerous one. If ladies living in or visiting that city are required to pursue their course over crosswalks flooded by a foot of water which has remained there for days and even weeks, and the city is not liable for an injury flowing directly from that condition, a new principle in the law of negligence must be established.

To sustain this new doctrine the following cases are cited: *Harrington* v. *City of Buffalo* (121 N. Y. 147); *Kaveny* v. *City of Troy* (108 N. Y. 571); *Taylor* v. *City of Yonkers* (105 N. Y. 203); *Muller* v. *City of Newburgh* (32 Hun, 24; affirmed, 105 N. Y. 668); *Beltz* v. *City of Yonkers* (148 N. Y. 67); *Lane* v. *Town of Hancock* (142 N. Y. 510). These cases will be examined in vain to find authority for any such doctrine. In the *Harrington* case it was simply held that

the duty resting upon a municipal corporation to remove accumulations of ice and snow upon its streets, becomes imperative only when dangerous formations or obstacles have been created and notice of their existence has been received by the corporation, or sufficient time has elapsed to afford a presumption of knowledge of their existence and an opportunity to effect their removal.    The *Kaveny* case decided that a municipality was not responsible for the construction or sufficiency of the eaves of buildings upon the land of individuals adjoining its sidewalks, and that it was not bound to prevent the formation of ice from the drip of a roof upon a sidewalk.    It also decided that a municipality was not bound to exercise unreasonable, persistent and extraordinary diligence, during freezing weather, to remove ice formed from natural causes, but that it was simply ·bound to keep sidewalks reasonably clean and safe.    The *Taylor* case was to the effect that where a fall of rain or the melting of snow on adjoining premises was suddenly followed by severe cold, and thus the sidewalks were covered with a layer of ice, making them slippery and dangerous, the municipality was not required to see to its removal, but might, without liability or negligence, await a thaw to remedy the evil.    In the *Muller* case it was held that the municipality had no actual notice of the condition of the street, and that the condition had not existed a sufficient length of time to justify an inference of notice to the municipal authorities, and for that reason was not liable.    In the *Beltz* case the court held that a municipal corporation must guard against such dangers in its streets as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care, but that it was not chargeable with negligence in omitting to repair a defect in a street, so slight that no prudent man would reasonably anticipate any danger from its existence. In the *Lane* case, which related to a town highway, it was held that to impose a liability for negligence upon a town it must be shown that the proximate cause of the injury was an omission upon the part of the commissioner to use ordinary care, under all the circumstances, in the performance of his

duties; that is, such care as a reasonable and prudent person would have exercised under those circumstances.

These cases fall far short of establishing a doctrine which would justify a reversal of the judgment in this case. The proof was such as to leave no question of doubt but that the city was fully apprised of the situation at that point, or that, in the exercise of reasonable and ordinary inspection, it would have acquired knowledge of its condition. Moreover, if there was any question as to the defendant's knowledge, it was for the jury and not one of law.

Again, when tested by the inquiry whether the accident could fairly or reasonably have been anticipated by the city authorities, it seems quite obvious that any reasonably, prudent or careful man must have foreseen that with a crosswalk covered by a foot of water, persons seeking to cross the street would naturally resort to the ridges upon either side, and that, existing in the condition they were, such an accident would probably follow.

I am totally unprepared to concur in the opinion that, as a matter of law, it is not negligence for a great and populous city, upon a prominent and much-used street, to permit its crosswalks to become and remain flooded with a foot of water, with ridges or banks of snow, ice, stones and dirt upon each side, when, by the discharge of its plain duty to remove obstructions from its gutters, the water would not have accumulated and the crossing would have been in proper condition for use. Nor do I believe when the plaintiff was confronted with such a situation, and sought to retreat, but was unable to do so, that it was contributory negligence for her to follow the course of the multitude crossing at that place by stepping upon the ridge upon one side of the crossing, thus employing the only means by which she could reasonably hope to reach the place of her destination.

The questions of the defendant's negligence, and the plaintiff's freedom from contributory negligence, were, under the evidence, clearly questions of fact for the jury. How it can be held that the questions whether the plaintiff should have

retreated when the proof shows that it was practically impossible, or whether she should not have followed the course pursued by others who were similarly situated, were questions of law, I cannot comprehend.

I think the judgment should be affirmed.

PARKER, Ch. J., GRAY and HAIGHT, JJ., concur with O'BRIEN, J., for reversal, etc.; BARTLETT and VANN, JJ., concur with MARTIN, J., for affirmance.

Judgment reversed, etc.